UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

JOHN A. HAWKINSON,

             Plaintiff,

v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT; EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW;
DEPARTMENT OF HOMELAND
SECURITY; and DEPARTMENT OF
JUSTICE,

             Defendants.
_____)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.  20-10189-FDS

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff  John A. Hawkinson ("Plaintiff")  commenced this action under the Freedom of

Information  Act, 5 U.S.C. § 552 ("FOIA"),  seeking  the release of certain documents  and

information  from Defendants Executive Office of Immigration  Review ("EOIR") and the

Department of Homeland Security ("DHS"), U.S. Immigration  and Customs Enforcement

agency ("ICE").  In general, Plaintiff  requested documents  concerning  training  materials

provided  to the Boston and Hartford immigration  court and staff, including  agency counsel, in

light  of this Court's (Saris, J.) ruling  in the case of *Pereira-Brito v. Barr*, Civil  Action No. 19-

11314-PBS ("*Brito*") which placed the burden on the government  to show that an alien seeking

release on bond is a danger to the community  or flight  risk. *Id.,* 415 F. Supp. 3d 258 (D. Mass.

2019).[1]  The requests also sought any communications  regarding same. The time frame encompassed in Plaintiff's request is November 27, 2019 through December 17, 2019.

In support of their Motion  for Summary Judgment, Defendants files their Local Rule 56.1 Statement of Facts which attaches thereto the Declaration of Fernando Pineiro,  ICE's Acting FOIA Officer  ("Pineiro Decl."), as *Exhibit 1* and the Declaration of Joseph Schaaf, EOIR's Supervisory Attorney Advisor (FOIA) of the Office of General Counsel ("OGC") ("Schaaf Decl."), as *Exhibit 2*, respectively, which recounts their administrative  processing of the Plaintiff's FOIA request, review of the documents  provided,  and the bases for withholding  or redacting any information  during production of responsive materials.

For the reasons set forth herein and in Defendants' Local Rule 56.1 Statement of Facts simultaneously  submitted herewith, Defendants respectfully submit  that no genuine issue of material fact exists and that their Motion  for Summary Judgment  should  be granted pursuant to Rule 56 of the Federal Rules of Civil  Procedure because they have produced all documents responsive  under FOIA, and all documents  that were withheld  from production  or redacted by Defendants are exempted under that statute.

## I.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Where no genuine  dispute  exists as to any material fact, summary judgment  is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);  *Borges v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010) (citing  Fed. R. Civ. P. 56(c)(2)).  A genuine  issue of material fact is one that would change the outcome of the litigation.   *Anderson*, 477 U.S. at 247.  "The burden  on the

---

[1]  Defendants have appealed this Court's ruling  in *Brito* to the First Circuit Court of Appeals, Appeal No. 20-1119,  and a hearing  has been scheduled for December 9, 2020.

moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     FOIA Cases are Most Appropriately Decided on Summary Judgment**

FOIA actions are "generally and most appropriately" adjudicated through summary judgment. *National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*, 811 F. Supp. 2d 713, 732-733 (S.D.N.Y. 2011), *citing Bloomberg L.P. v. Board of Governors of the Fed. Reserve Sys.,* 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009); *Miscavige v. Internal Revenue Serv.,* 2 F.3d 366, 369 (11th Cir. 1993).

"In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *ACLU Foundation of Massachusetts v. FBI*, No. 14-11759, 2016 U.S. Dist. LEXIS 110022, at *9 (D. Mass. Aug. 17, 2016) (quoting *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C.2009)). An agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and plaintiff with affidavits or declarations

and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Public Citizen Inc. v. Dept. of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

Generally, a court should accord "substantial weight" to agency affidavits in these matters. *See Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977). Further, the test of sufficiency of the submitted affidavits should be whether the affidavit demonstrates by "sufficient description (that) the contested document logically falls into the category of the exemption indicated," and the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Id.* at 487. *See also Hrones v. C.I.A.*, 685 F.2d 13, 18 (1st Cir. 1982).

The requester may challenge such a showing by "set[ting] forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). Agency declarations "are afforded a presumption of good faith", and an adequate affidavit "can be

rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't. of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).

## II.   ARGUMENT

### A. Defendants are Entitled to Judgment as a Matter of Law

#### 1.   Defendants Properly Withheld Information Pursuant to 5 U.S.C § 552(b)(5)

##### a.   FOIA Exemption (5)

Pursuant to Exemption 5, Defendants properly withheld documents protected by the deliberative process privilege, the attorney client privilege, and the attorney work product doctrine. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002). 5 U.S.C. § 552(b)(5). The scope of the exemption is intended to incorporate and mimic the rules of civil discovery, including doctrines such as "attorney work product," "attorney client privilege," and the "deliberative process privilege." *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-150 (1975); *see also State of Maine*, 298 F.3d at 66.

##### i.   Internal Communications Deliberating Decisions by Defendants Were Properly Withheld Under the Deliberative Process Privilege

Documents covered by the deliberative process privilege and exempt under Exemption 5 include those that "reflec[t] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *See Sears, Roebuck, & Co.*, 421 U.S. at 150 (internal quotations omitted), *quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.C. 1966). The deliberative process privilege exists "to prevent injury to the quality of agency decisions. *Sears, Roebuck & Co.*, 421 U.S. at

151. This also helps to avoid confusion of the public due to "...dissemination of documents suggesting reasons and rationales for a course of action which were not...the ultimate reasons for that action." *American Federation of Government Employees, AFL-CIO, Local 1164 v. U.S. Dept. Of Health & Human Services*, 64 F. Supp. 2d 104, 107 (D. Mass. 1999), *quoting Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

To properly invoke Exemption 5, an agency must first show that a requested document was pre-decisional; that is, "...prepared prior to a final decision in order to assist an agency decision maker in arriving at his decision. *See Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992) (internal quotations omitted), *quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). It must additionally be shown that the document represents "...a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Id*. By exempting disclosure, government agencies are able to engage in candid deliberations in advance of reaching a final decision on an issue. *See Petroleum Info Corp. v. U.S. Dep't of Interior*, 92 F.2d 1429, 1434 (D.C. Cir. 1992) (deliberative process privilege protects "give and take" consultative process in agency decision-making).

In this matter, records sought by the Plaintiff in connection with EOIR involve a number of internal emails and attachments from the Administrative Chief Immigration Judge (ACIJ) to the Boston and Hartford immigration judges and court staff advising how and when to implement the bond hearing requirement imposed by the Court in the on-going litigation of *Brito. See* Schaaf Decl., *Exhibit 2*, ¶¶ 19, 24. These emails contained restatements of OGC legal advice and guidance to EOIR staff at the aforementioned immigration courts regarding OGC's interpretation of the holding and order in *Brito. Id.*, ¶ 23.

More specifically, in connection with Part 1 (training) the first email entitled "*Brito* Litigation", the redaction is a cut and paste from an OGC email to ACIJ Sanchez regarding the *Brito* court order, as well as ACIJ Sanchez's view of the *Brito* order based on the OGC communication. *Id., ¶* 24. The second email, also entitled "*Brito* Litigation", contains ACIJ Sanchez' summary of a conversation with OGC attorneys regarding the current state of the *Brito* litigation, an assessment of its impact on court operations, and a footnote pointing the Hartford immigration court to a particular portion of OGC guidance, a copy of which was attached to the email. *Id., ¶* 25. This email, like the above, is pre-decisional and derived from confidential communications between OGC attorneys and their clients about *Brito*. *Id*. Lastly, in the third email entitled "*Brito* Issues", the redacted information summarizes the current state of OGC's efforts to provide a notice in compliance with the *Brito* decision, and provides interim guidance in providing advertisements to members of the class and documenting notice provided pursuant to the order. *Id*.

As these immigration matters, like *Brito,* are typically lengthy and subject to appeal as in this case, the advice and guidance rendered are subject to change based on developments in the litigation as interpreted, or re-evaluated, by the attorneys. *Id., ¶* 23. The OGC legal advice was the by-product of collaboration between attorneys at EOIR, the OIL, Civil Division, and DHS. *Id*. This advice and guidance provided to Hartford and Boston immigration court attorneys was and continues to be interim, awaiting final resolution of the *Brito* litigation and/or issuance of official agency-wide policy by the Office of the Chief Immigration Judge, which promulgates the Immigration Court Practice Manual, or EOIR's Policy, which issues official EOIR Policy Memoranda on behalf of the Director of EOIR. *Id*.

With regard to documents containing redactions from ICE under the deliberative process privilege of Exemption 5, the document entitled "*Brito* Strategy Session" (Bates No. 01-21) contains recommendations for trial attorneys regarding potential strategies to pursue when conducting bond hearings under the new *Brito* standard. *See* Pineiro Decl., *Exhibit 1,* ¶ 31. The disclosure of these recommendations would chill the free and frank exchange of ideas that form the backbone of effective decision-making when it comes to selecting the most effective strategy to pursue in litigating immigration cases on behalf of ICE. *Id.*

In addition, ICE redacted portions of the "*Brito* MSJ Appeal and Stay Recommendation," email chain(s). The withheld material consists of a detailed recommendation drafted by an ICE attorney for consideration by DOJ OIL regarding the issues for potential appeal in the *Brito* decision and a stay of the order in that case.[2] *Id.,* ¶ 38. *See also,* Schaaf Decl., *Exhibit 2,* ¶ 33.[3] Subsequent exchanges consist of further deliberations between ICE, EOIR and DOJ OIL regarding which litigation strategy to pursue in the case – from whether or not to file a motion for extension of deadlines, to discussions regarding the suggested language of the motion and ICE/EOIR edits to it, to DOJ OIL attorney's legal advice provided to ICE and EOIR regarding what the next steps should be in terms of recommended filings, and ICE attorney's opinion regarding DOJ OIL's recommendation.[4] *Id.*

---

[2] Bates 22-24.

[3] In light of fact that the deliberations involved EOIR, it too redacted this information from this same email document (Bates No. 39-40), as well as the email string captioned "*Brito* MSJ Hearing". *Id.,* ¶ 32.

[4] Bates 25-35, 36-47, 54-66, 382-385 and 395-398.

Further, ICE withheld as deliberative, portions of the "*Brito* MSJ Hearing" email exchanges, which appear in various iterations in Bates Nos. 129-132, 133-137, 161-164, 252-260, 372-381, and 382-385.[5]  The withheld materials consists of expressions of opinion and recommendation by a DOJ OIL attorney to ICE and EOIR, in his capacity as counsel to both agencies, regarding the next steps in the litigation of the *Brito* case and which arguments the agencies should focus on in order to ensure an optimal outcome.[6]  *Id.*  ICE also withheld two draft, unsigned, court filings containing re-tracked edits suggested by EOIR and ICE to DOJ OIL, as well as comments.  *Id.,* ¶ 40.  These documents were both drafted by DOJ OIL, submitted to EOIR and ICE, for comment and edits, are not in final form.  *Id.*

Release of these materials would serve to profoundly chill the decision-making process across ICE and between ICE and DOJ OIL, the federal agency that represents ICE in all federal litigation, where it is crucial that ICE employees are able to freely express their opinion regarding how best to represent the agency's interests.  *Id.,* ¶¶ 39, 40.  Disclosure would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of DOJ OIL, which would adversely affect the ability to ICE to effectively conduct government business.  *Id.*

At bottom, the withheld or redacted information detailed in the *Vaughn* Indices is part of the deliberative process undertaken by the Defendants before reaching a final policy decision and protected under Exemption 5.  *See, e.g., Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014) (key

---

[5] An iteration of this email chain also appears on Bates Nos. 122-124 and 125-128, but was not listed here as no information was withheld under Exemption 5 on these pages.

[6] *See* e.g. Bates 129-130, 135, 161, 252-253.

issue is whether the documents were "prepared to facilitate and inform a final decision or deliberate function essential to the agency."), *quoting Providence Journal Co.*, 981 F.2d at 560.

### ii.       Attorney Work Product Privilege

Exemption 5 also encompasses the work product privilege. *Sears, Roebuck & Co.*, 421 U.S. at 154-55 (1975). That doctrine protects documents "prepared in anticipation of litigation," as well as "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3); *accord A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146 (2d Cir. 1994). Without such protection, an entity would have to choose between "scrimp[ing] on candor and completeness" or disclosing its "assessment of its strengths and weakness . . . to litigation adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1200 (2nd Cir. 1998). Indeed, the purpose of the work product privilege is to protect the integrity of the adversary process by "providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a case, and prepare legal theories." *See Nat'l Ass'n of Criminal Defense Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys,* 844 F.3d 246, 250-51 (D.C. Cir. 2016). When a document is created for more than one purpose, it is still protected by the privilege as long as one of the reasons it was prepared was in anticipation of litigation. *See Maine v. Dep't of Interior,* 298 F.3d 60, 68 (1st Cir. 2002).

The privilege protects not only "deliberative materials but it also protects factual materials prepared in anticipation of litigation. Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 617, 620 (D.C. Cir. 1997) (citations omitted), *quoted in ACLU v. U.S. Dep't of*

*Justice,* 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015). Additionally, invocation of the privilege does not depend on the existence of a specific case or claim; "memos [that] advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" are protected work product. *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126-27 (D.C. Cir. 1987); *accord Adlman*, 68 F.3d at 1501-02; *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (documents that "contain[ ] tips for handling [a class of] cases that could affect subsequent . . . litigation" are the "sort of information—prepared in anticipation of litigation— [that] falls within the attorney work-product privilege and, therefore, within exemption 5"), *abrogated on other grounds*, *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011).

Here, the EOIR properly withheld two documents that were attached to internal emails; namely, (i) "OGC guidance *Brito* 12/9/19 final", and (ii) "EOIR Instructions and Guidelines Alternatives to Detention final". *See* Schaaf Decl., *Exhibit 2, ¶¶* 29, 30. These two documents were drafted by EOIR OGC, each of which contains legal analyses, opinions, and recommendations from OGC to its Agency clients on how to handle bond hearings anticipated to occur as a result of *Brito,* as well provide guidance to Agency clients as to "alternatives to detention" as a result of the decision in *Hernandez v. Lynch. Id.,* ¶ 30. Similarly, when the EOIR is a named party to litigation, attorneys from the Immigration Litigation Unit within the EOIR OGC are assigned as agency counsel in a case when necessary to provide legal advice and guidance to employees in the field (i.e., immigration courts) regarding the interpretation of legal holdings and orders promulgated in a case. *Id.,* ¶ 23. The advice is often crafted in consultation with the attorney assigned as agency counsel and OIL. *Id.* The redactions made in

aforementioned within the three emails containing advice and guidance to EOIR, in conjunction with OIL, were made pursuant to the attorney-work product privilege under Exemption 5. *Id.*

Similarly, EOIR redacted information in the email strings entitled "*Brito* MSJ Hearing", "*Brito* MSJ Appeal and Stay Recommendations", and "*Pereira-Brito* Service of Class Notice" as the text redacted in these e-mail strings consist of legal conversations, preliminary assessments, and draft legal language shared exclusively between Government attorneys representing their agencies in ongoing civil litigation in which the United States is a party, the release of which would tend to reveal the Government attorneys' legal strategies, opinions, recommendations, and legal assessments of the strength and weakness of the Government's position. *Id.*, ¶ 32.

Further, ICE properly withheld the document titled "*Brito* Strategy Session" as work product privileged because it contained recommendations to ICE attorneys from OPLA OCC Boston regarding how to prepare for, and litigate, bond hearings before EOIR that aliens were anticipated to request under *Brito*. *See* Piniero Decl., *Exhibit 1,* ¶ 28. More specifically, the redacted information consists of: (1) instructions to the ICE trial attorneys regarding how to ensure service of class notice was provided to the aliens who qualify for a new bond hearing under the decision; (2) recommendations to the trial attorneys regarding what to argue before immigration judges after a class member moves for a second bond hearing under *Brito*; (3) exhaustive instructions to the attorneys regarding how to prove "dangerousness" and "flight risk" factors when arguing for continued detention of the alien; (4) suggested potential lines of questioning of the alien to prove these factors, under *Brito*; (5) a discussion of the legal significance of the alien's ability/inability to pay the bond, what evidence to look for and submit to the immigration judge on that topic, as well as sample lines of inquiry regarding the ability to

pay, and (6) instruction for the trial attorney regarding what to argue before the immigration judges on the issue of alternatives to detention. *Id., ¶ 29.*

In other words, the "*Brito* Strategy Session" document was prepared by attorneys specifically in contemplation of litigation that was anticipated to ensue as a consequence of the *Brito* decision as covered members of the class requested new bond hearings under that case. *Id., ¶ 30.* It instructs attorneys on how to prepare for these bond hearings, what arguments to present to immigration court, what type of evidence to look for, and which lines of questioning to pursue. *Id.* Disclosure of this information would significantly harm the integrity of the attorneys' preparation process and their ability to effectively represent ICE's interests during bond hearings. *Id. See, e.g., Nat'l Ass'n of Criminal Def. Lawyers,* 844 F.3d at 251-52 (manual provided by DOJ for criminal prosecutions, which contained "litigation strategies" and provided "how to advice…about how to handle different scenarios and problems," and discussed "the types of challenges prosecutors may encounter in the course of prosecutions and potential responses and approaches" was protected by the work product privilege).

Similarly, redaction of information contained in the 3 internal emails between the EOIR, OIL and ICE regarding *Brito* which centered on their analysis, opinion and legal strategy concerning this on-going litigation and appeal were withheld under the work product privilege. *See* Schaaf Decl., *Exhibit 2, ¶ 31. See Citizens for Responsibility & Ethics in Washington v. Nat'l Archives & Records,* 583 F. Supp. 2d 154, 163 (D.D.C. 2008) (emails exchanged between government agency attorneys regarding on-going litigation protected work product).

The legal discussions and analyses contained within these documents places them squarely within the scope of the Exemption 5's work product privilege. *See Dalitzky v. U.S. Small Bus. Admin.,* 144 F.R.D. 8, at 13 (D. Mass. 1992) (granting attorney work product

privilege to documents containing the "attorney's mental impressions and legal theories" created in preparation for litigation); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 48 F. Supp. 3d 40, 49 (D.D.C. 2014) (acknowledging that administrative reports or documents can reveal an attorney's mental impressions and strategies, justifying attorney work product privilege); *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (applying the attorney work product privilege to emails and notes prepared in anticipation of litigation); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 217 (D.D.C. 2011) (granting attorney work product privilege to email messages containing "draft memoranda and draft pleadings"). Therefore, these communications are exempt pursuant to the work product privilege.

### iii.       Attorney-Client Privilege

Finally, Exemption 5 includes the attorney-client privilege. *Sears, Roebuck & Co.*, 421 U.S. at 154 (1975). This portion of the exemption protects "confidential communications made by a client to his attorney." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 71 (1st Cir. 2002); *accord In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001). The purpose of such protection is to promote full disclosure between clients and their attorneys, allowing attorneys to represent their clients effectively and efficiently. *Mead Data Ctr., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

This privilege protects materials where: (1) the holder of the privilege is a client; (2) the individual receiving the communication is a member of the bar acting in their official capacity as a lawyer; (3) the communication relates to a confidential fact that was disclosed to the attorney for the purpose of receiving legal advice; and (4) the client has claimed the attorney-client privilege. *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 841 F. Supp. 2d 142,

153-54 (D.D.C. 2012), *citing In re Sealed Case*, 737 F.2d 94, 98-99, 237 U.S. App. D.C. 312 (D.C. Cir. 1984). Additionally, the parties must maintain "the confidentiality of the communications at issue," and obtaining legal advice must be the primary purpose of the communication. *Judicial Watch*, 841 F. Supp. at 154; *accord Cause of Action Inst. v. United States DOJ*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018), *citing In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759-60 (D.C. Cir. 2014); *see Hunton & Williams LLP v. U.S. Env't al Prot. Agency*, 346 F. Supp. 3d 61, 8 32, 33.1 (D.D.C. 2018) (finding a document covered by deliberative process privilege because it is primarily a recommendation, but not attorney-client privilege because obtaining legal advice was not the primary reason for the document).

EOIR properly withheld the two above-referenced attachments (i.e., "OGC guidance *Brito* 12/9/19 final", and "EOIR Instructions and Guidelines Alternatives to Detention final") and portions of 3 email exchanges (i.e., *"Brito* MSJ Appeal and Stay Recommendations", *"Brito* MSJ Hearing", and *"Pereira-Brito* Service of Class Notice" email chains) between attorneys for EOIR, OIL and ICE where they contain legal analysis, opinion and recommendations, preliminary assessments and draft legal language between these lawyers assigned to and representing their agencies in on-going litigation in *Brito,* as well as their strategy on the government's impending appeal of *Brito* which is scheduled for a hearing before the First Circuit Court of Appeals on December 9, 2020. *See* Schaaf Decl., *Exhibit 2, ¶* 32, 33.

With regard to ICE (and EOIR as generally described above), they withheld portions of certain documents under the attorney client privilege. That is, ICE (and EOIR) redacted information from two major email chains; more specifically, the emails chains dealing with (a) "*Brito* MSJ Appeal and Stay Recommendations" and (b) "*Brito* MSJ Hearing." *See* Piniero Decl*., Exhibit 1, ¶* 34. *See also* Schaaf Decl., *Exhibit 2, ¶* 33. With respect to the "*Brito* MSJ

Appeal and Stay Recommendations" email chain, ICE redacted portions of the [7] chain that was authored by an ICE attorney, in her capacity as DOJ's client, since DOJ represents ICE in federal litigation, for consideration by DOJ OIL. *Id.,* ¶ 35. The email contains ICE's recommendation on the issues for potential appeal in the *Brito* decision and a stay of the order in that case. *Id.* This information was provided by ICE to assist DOJ OIL, who would handle the appeal, in deciding how best to represent the agency's interests before the federal court. *Id.* In addition to ICE's recommendation, the email contains the attorney's legal analysis in support of ICE's recommendation to appeal, as well as her assessment of the potential operational impact the *Brito* decision may have on agency operations. *Id.*

Subsequent emails forming the email chain consist of similar input from EOIR, providing that agency's perspective on the recommended course of action, as well as thoughts and legal advice provided by DOJ OIL in response to ICE and EOIR perspectives. *Id.,* ¶ 36. *See also* Schaaf Decl., *Exhibit 2,* ¶ 33. Other topics discussed later in the email chain include a back-and-forth exchange of opinions among EOIR, ICE and DOJ OIL attorneys regarding whether or not to file a motion to extend time for agencies to comply with the deadlines, edits to the language of the motion and discussion of the best strategy to pursue and of how best to respond to new filings by the plaintiff. *Id.* Here, as in earlier emails, ICE attorneys provide their recommendation to DOJ OIL in their capacity of a client, and feedback from DOJ OIL consists of legal advice regarding optimal litigation strategies that ICE and EOIR should pursue. *Id.*

With respect to the "*Brito* MSJ Hearing" email chain, ICE redacted the expressions of opinion and recommendation by DOJ OIL attorney to ICE and EOIR, in his capacity as counsel

---

[7] *See* Bates 22-24.

to both agencies, regarding: (1) the next steps in the litigation of the *Brito;* (2) DOJ OIL's assessment of the litigation strategy that the plaintiff is likely to pursue, and (3) instruction as to what DOJ OIL counsel needed to receive from ICE and EOIR in order to effectively represent both agencies.[8]  *Id.,* ¶ 37.  ICE also withheld DOJ OIL's summary of an interagency call between DOJ OIL, EOIR and ICE regarding litigation strategy, where DOJ OIL counsel provided his legal advice to the agencies with respect to the relevant legal arguments that should be made in order to effectively support the legal positions of both EOIR and ICE before the federal court.[9] *Id.  See also* Schaaf Decl., *Exhibit 2,* ¶ 32.

In sum, the attorney-client privilege applies to the documents and email chain(s) identified above because the redacted portions constitute and/or reflect opinions and analysis of ICE OPLA attorneys regarding the legal strategy DOJ OIL should pursue in representing the agency, as well as DOJ OIL legal advice on how the agency's interests should best be protected, and their assessment of the plaintiff's litigation strategy and its effect on ICE's position. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor.  If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel.  *See State of* Maine, 298 F.3d at 72 (denying attorney-client privilege protections to *Vaughn* entries that fail to support a claim of confidentiality or justify the privilege); *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, 320 F. Supp. 3d 162, 176

---

[8] *See e.g.* Bates 129-130, 135, 161.

[9] Bates 252-253.

(D.D.C. 2018) (granting attorney-client privilege protection to a legal outline that was not shared beyond the Attorney General, the OLC and the President and his national security staff); *New York Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 234, 238-39 (D.D.C. 2017) (finding a memo that details legal advice given based on confidential information as a "quintessential example" of a document covered by attorney-client privilege); *Bloche v. Dep't of Defense*, 414 F. Supp. 3d 6, 46 (D.D.C. 2019) (protecting redactions under attorney-client privilege on a document containing legal advice and recommendations). As the communications at issue satisfy the standard to invoke the attorney-client privilege, they are exempt from disclosure.

### b. FOIA Exemptions 6 and 7 (C)

Exemptions 6, as well as Exemption 7(C), both provide that government documents may be withheld where their disclosure would cause an "unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6), (b)(7)(C ); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174-75 (1991). Specifically, Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6). Similarly, Exemption 7(C) provides that FOIA does not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C ). To determine whether a record has been properly withheld under both Exemptions 6 and 7(C), courts balance the privacy interests versus public interests in the disclosure of the records at issue. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 762 (1989); *Providence Journal Co. V. U. S. Dep't of Army,* 981 F.2d 552, 568 (1st Cir. 1992). The only cognizable public interest for FOIA purposes in this

context is the "citizen's right to be informed about 'what the government is up to.'" *See Maynard v. C.I.A.,* 986 F.2d 547, 566 (1st Cir. 1993).

In the end, the purpose of Exemption 6 is to protect individuals from injury and embarrassment that can result from the unnecessary disclosure of personal information. *See U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599 (1982). Likewise, the Supreme Court has emphasized that the concept of "personal privacy" under Exemption 7(C) as broadly protecting "an individual's control of information concerning his or her person," and an individual's "interest in keeping personal facts away from the public eye." *Reporters Comm.,* 489 U.S. at 763; *see Favish,* 541 U.S. at 165 ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea."). Stated differently, Exemption 7(C) protects a broad notion of personal privacy and that where the provider of information is a private individual, the "privacy interest . . . is at its apex." *Reporters Comm.,* 489 U.S. at 780. As the Supreme Court noted, "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *Id.* at 765-66.

Conversely, as emphasized above, "the *only* relevant public interest in the FOIA balancing analysis," according to the Supreme Court, "is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties . . . ." *Bibles v. Or. Natural Desert Ass'n,* 519 U.S. 355, 355-56 (1997) (alteration and internal quotation marks omitted); *see Reporters Comm.,* 489 U.S. at 773. If the government satisfies its burden of proving that Exemption 6 (and 7(C)) is applicable because there is a relevant private interest in the requested materials, the burden then shifts to the individual requesting the information to demonstrate that the public interest served by disclosure "is a significant one," and that disclosure of the documents is likely to advance that interest. *Favish,* 541 U.S. at 172.

Here, generally speaking, the only information redacted by ICE (and EOIR on behalf of ICE) from the documents under Exemption 6 and 7 (C) was the names, email addresses, telephone and cell numbers of several ICE employees, and nothing more. In regards to ICE, its attorneys work for a law enforcement agency and, as such, are exposed to and handle official law enforcement investigative information. *See* Piniero Decl., *Exhibit 1,* ¶ 48. Release of such personally identifiable information could subject them to harassment in their personal and private lives. *Id.,* ¶ 49. *See also Rojas-Vega v. United States Immigration and Customs Enforcement,* 302 F. Supp. 3d 300, 310 (D.D.C. 2018) (Exemptions 6 and 7(C) protects release of personally identifiable information of ICE employees). In fact, acknowledging the sensitivity of release of personal identifying information and likely consequences therefrom, ICE Office of Personnel Management (OPM) designated ICE as a security/sensitive agency for FOIA purposes, ensuring that OPM would withhold all personal identifying information pertaining to ICE employees. *Id.*[10]

Further, the names and alien numbers of third parties was also redacted as an unwarranted invasion of privacy as these unsuspecting individuals could be subject to embarrassment, harassment and undue public attention should this information be disclosed. *Id.,* ¶ 50. Third party individuals have an expectation of privacy in not being associated with law enforcement investigations through release of records compiled for law enforcement purposes and the mere mention could result in stigmatization. *Id.,* ¶ 51. *See Maynard,* 986 F.2d at 566 (1st Cir. 1993) (names of FBI agents and third parties who were involved in CIA investigation

---

[10] EOIR did not redact the names of DOJ employees, but did redact certain personal information (e.g., cell phone numbers and other direct contact information) where the value of the information in shedding light on agency operations clearly does not outweigh the privacy interests of these individuals.

all had significant privacy interest in not having names released and plaintiff failed to suggest how disclosure would reveal what the government was up to).

Bearing the above in mind, ICE balanced the privacy interests of the individuals described above against the public interest in shedding the light on what ICE is up to and determined that the minimal redactions of ICE attorneys names, email addresses, cell numbers, and the information pertaining to third parties involved in law enforcement investigations was warranted and protected under Exemptions 6 and 7(C). *Id.,* ¶¶ 53, 54.   At bottom, there can be no claim by Plaintiff that the disclosure of this information would provide the public with a greater understanding of "what the government is up to" in order to mount a challenge to such minor withholdings under Exemption 6 and 7(C) and the minor redactions are protected under FOIA. *See Federal Labor Relations authority v. United States Dep't of Navy,* 941 F.2d 49, 57 (1st Cir. 1991) (where the information does not relate to what the government is up to, a non-zero interest in privacy at stake cannot be outweighed by a public interest that falls outside FOIA's purpose); *Stalcup v. CIA,* 768 F.3d 65, 74 (1st Cir. 2014) (names of third party witnesses properly withheld under Exemption 7(C)).

**B.  This Court Lacks Jurisdiction Over Plaintiff's APA Claim Since FOIA Provides an Adequate Remedy at Law**

In his Amended Complaint, Plaintiff seeks an order requiring Defendants DHS and ICE to comply with FOIA and provide the statutory requested telephonic *and* electronic status systems[11], report their annual statistics properly, and appoint their statutory mandated Chief FOIA officer. *See* Amended Complaint, Dkt. No. 23, ¶¶ 11, 70B, 70E, 70G, and 74.  Oddly

---

[11] The statutory provision cited by Plaintiff in this regard, 5 U.S.C. § (7)(B) discusses the establishment of a telephone line *or* Internet service to check the status of a FOIA request, not both.

enough, Plaintiff acknowledges that, in fact, DHS and ICE do, in fact, have telephonic and electronic email systems, and responded to his inquiries. *Id.*, ¶¶ 45, 50, 51.[12] Plaintiff's chief complaint is that ICE's responses to his inquiries were not as fast as he would have liked. Plaintiff does not point to any statutory provision in FOIA which sets a specific time frame within which to respond to general email or telephonic inquiries other than the 20 days to respond to the FOIA request in general under 5 U.S.C. § 552(a)(6)(i) and (ii). *Id.,* ¶ 51H. Notably, despite Plaintiff's first email inquiry of January 22, 2020 sent to DHS/ICE concerning the status of his FOIA request, he initiated suit only 9 days thereafter on January 31, 2020. Certainly, any response would have been fruitless since it is abundantly clear that Plaintiff had every intention of filing suit shortly after the expiration of the 20 day response period noted in his Amended Complaint. *Id.*, ¶¶ 51I. In any event, Plaintiff's APA Counts should be dismissed for want of jurisdiction.

The APA creates standards of judicial review to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C § 706(1); *see also Brock v. Pierce County*, 476 U.S. 253, 260 (1986) (APA permits district court to compel agency action). It does not, however, "afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 77 n.4 (1st Cir. 2002). The law is

---

[12] In ¶¶ 51A of the Amended Complaint, Plaintiff asserts that he sent a January 22, 2020 email to ICE FOIA seeking confirmation of his FOIA request. In ¶ 51B, Plaintiff then asserts that ICE responded to that January 22 email on March 2, 2020. However, in ¶ 45, Plaintiff acknowledges that on January 27, 2020, 5 days after his initial January 22 email, ICE did respond and inform him of receipt of his FOIA request and assigned it reference No. 2020-ICEO-19299, well within the 10 day time frame noted in 5 U.S.C. § 552 (7)(A). Also, on January 30, 2020, ICE/DHS informed Plaintiff that the best mode to check the status of one's FOIA request was to correspond with the office through email (not telephonically) because it receives an average of 5,500 FOIA requests a month inquiries as fast as he would like and nothing more.

clear that review under the APA is *un*available when another statute provides an adequate remedy. *See Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988).

That being said, FOIA provides a party with a clear remedy for agency non-compliance with FOIA deadlines, namely, a motion asking the court to compel the agency to act on the FOIA request. *See* 5 U.S.C. § 552 (a)(4)(B); *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 63 (D.C. Cir. 1990) (purpose of FOIA deadline provisions is to allow a FOIA requester, who has yet to receive a response from an agency, to seek an order from the court compelling release of the documents). Here, Plaintiff has exercised his rights under FOIA and brought suit against Defendants seeking to compel production of the documents responsive to his FOIA request since they were not produced within the deadlines set by the statute. The fact that he did not receive a response to his email inquiries about the status of his FOIA request within the time frame he personally would have liked (and after he had already instituted this FOIA suit before he made said inquiries) is not a valid APA claim. At bottom, Plaintiff has an adequate remedy at law; that is, a suit brought under the FOIA. Thus, his APA claim should be dismissed. *See, e.g., Feinman v. Federal Bureau of Investigation, et al.,* 713 F. Supp. 2d 70, 76 (D.D.C. 2010).[13]

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Defendant respectfully requests the Court to grant summary judgment in its favor.

---

[13] Plaintiff also alleges a claim alleging a pattern and practice by ICE in failing to report properly response times, systematically under-counting its delays in responses, and giving the appearance of responding to inquiries at a much faster rate than they actually do. *Id.,* ¶ 70D. Nonetheless, Plaintiff does not have standing to assert these types of claims as he cannot show that he suffered an injury in fact as a result of this conduct. *See Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016) (to have standing, plaintiff must show that he has suffered an injury in fact traceable to the alleged misconduct which a court can favorably address).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     */s/ Michael Sady*
MICHAEL SADY
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3100
michael.sady@usdoj.gov