UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN A. HAWKINSON<br>    *Plaintiff*,<br>    v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT;<br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br>DEPARTMENT OF HOMELAND SECURITY;<br>and DEPARTMENT OF JUSTICE<br>    *Defendants*. | Civil Action No.<br><br>20-cv-10189-FDS<br><br>**ORAL ARGUMENT<br>REQUESTED** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff John A. Hawkinson respectfully opposes Defendants' Motion for Summary Judgment (ECF No. 48).

# I. Introduction

At its core, this case is about whether the Government can make secret rules for litigants in its non-Article III executive branch "courts"; conduct *ex parte* strategy and policy-and-practice -making processes between the judges of those courts and the Government attorneys who appear as "prosecutors" before them; and successfully shield all records about those things from the public view through claims of attorney-client and attorney-work-product privilege, as well as deliberative process privilege.

Along the way, this case can also clear up whether the Freedom of Information Act (FOIA) statute obliges the Government agencies to have a phone number without also obliging it to actually answer the phone when anyone calls—ever.

Lastly, since the Government delayed summary judgment in this case while producing hundreds of pages of duplicate emails that only barely fall within the scope of the request, this Court is also asked to adjudicate whether the Government can choose to work

inefficiently to produce those emails in crude archaic form[1] (while claiming the volume of its overall FOIA work means every request must slow down) that requires Herculean reconstruction efforts to be useful to the public — FOIA requesters like Plaintiff — and whether it can redact basic identifying information (names, email addresses) from those messages, rendering much of their metadata indiscernible.

Defendants claim to be burdened, yet actively take steps to perform their work more inefficiently and less effectively, to the increase of their burden.  If they are deliberately choosing inefficiency, then they are acting with deliberate indifference to the inefficiency they permit and this Court should not countenance that.

## II.  Background

On November 27, 2019, then-Chief Judge Saris issued a class action declarative judgment holding that Government bears the burden of proof at immigration bond hearings under 8 USC § 1226(a).  That judgment was accompanied by a permanent injunction binding the immigration court, here Defendant Executive Office for Immigration Review (EOIR), to follow that declaration effective December 13, 2019; and an injunction binding Defendant Immigration and Customs Enforcement (ICE) to notify class members.  *Gilberto* **Pereira Brito** *et al. v. William* **Barr** *et al.* 415 F. Supp. 3d 258 (D. Mass No. 19-cv-11314-PBS, ECF No. 88) (*appeal and cross-appeal noticed*)[2].

---

[1] The Government's productions in this case seem a model of what *not* to do in litigation as well as FOIA: issuing multiple documents with duplicate Bates numbers; furnishing born-digital documents as low-resolution rasterized images; providing black-and-white versions of color documents; manual redactions that are inconsistent with each other; and refusing to discuss narrowing the scope of the request to reduce its burden while taking three months to respond.  Plaintiff recognizes that the First Circuit has not yet held that FOIA respondents are required to follow Rule 34(b)(2)(E)'s requirements for electronic production of materials, but if the Rule is not binding, it at least provides a glidepath to measure what is reasonable.

[2] Lead petitioner has a compound surname, so is properly referred to as "Pereira Brito."  The district court ECF short-caption has the case as "*Brito v. Barr*," which has resulted in it being reported as *Brito*.  Plaintiff will refer to the case as *Pereira Brito*.

Plaintiff filed the FOIA requests at issue in this litigation on December 18, 2019 seeking training materials for EOIR's immigration judges (IJs) and ICE's trial attorneys (TAs) created by Defendants in response to Judge Saris's orders.

Much is muddied because *Pereira Brito* is under appeal at the First Circuit. The director and acting director of EOIR and ICE, respectively, were named as habeas respondents in the case, and both were represented through DOJ's Office of Immigration Litigation (OIL) and the local US Attorney's Office. Injunctive relief issued against EOIR, telling immigration courts how to evaluate their bond decisions, as well as against ICE, requiring notice to detained class-members.

The FOIA request inadvertently captured communications sent primarily between DOJ Civil Division attorneys and ICE and EOIR (the real parties in interest). Had those agency clients not replied-all to emails from Civil Division, much of these materials would not have been produced.

And while advice to counsel as to how to litigate the *Pereira-Brito* matter is clearly privileged, the steps taken to implement Judge Saris's injunction are not. Even when it is appealed, and even while that appeal is pending, the public is entitled to know how ICE and EOIR are both interpreting their obligations under the injunction, to the extent they have established policies and practices. For instance, are ICE's trial attorneys instructed to provide inculpatory evidence to immigration court respondents (through counsel), and if so on what schedule? Seconds before a bond hearing? Well in advance of it?

Discovery was informally stayed on the non-document FOIA and Administrative Procedure Act (APA) claims.

Plaintiff submits that Defendants have not met their burden to show the documents at issue in this case are exempt from disclosure, and this Court should therefore deny Defendants' Motion for Summary Judgment and require additional production and order discovery to ensure full and proper compliance with Plaintiff's FOIA request.

# III. Table of Contents

| | | |
|---|---|---:|
| I. | Introduction | 1 |
| II. | Background | 2 |
| III. | Table of Contents | 4 |
| IV. | Table of Authorities | 5 |
| V. | Statement of Facts | 7 |
| VI. | Standard of Review | 7 |
| VII. | FOIA Document arguments | 7 |
|     A. | Category One: Training documents | 8 |
|         A.1 | ICE's deliberative process claims fail | 9 |
|         A.2 | EOIR's deliberative process claims fail | 10 |
|         A.3 | ICE's attorney work-product claims fail | 11 |
|         A.4 | EOIR's attorney work-product claims fail | 11 |
|         A.5 | Attorney client-privilege claims fail | 11 |
|     B. | Category Two: Email communications with OIL attorneys | 12 |
|         B.1 | Email addresses and names | 13 |
|         B.2 | Format of production | 16 |
| VIII. | Plaintiff's non-document claims | 17 |

# IV. Table of Authorities

CASES                                                                                                    Page

*Gilberto **Pereira Brito** et al. v. William **Barr** et al.* 415 F. Supp. 3d 258 (D. Mass
   No. 19-cv-11314-PBS, ECF No. 88) (*appeal and cross-appeal
   noticed*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 8, 12

*Coastal States Gas Corp. v. Department of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Families for Freedom*, 797 F. Supp. 2d 375 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . 14

*Hickman v. Taylor*, 329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hopkins v. Department of Hous. and Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*National Wildlife Fed'n v. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988) . . . . . . . . . . 10

*Nkihtaqmikon v. BIA*, 450 F. Supp. 2d 113 (D. Maine 2006) . . . . . . . . . . . . . . 17

*Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 9

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) . . . . . . . . . . . 17

*Providence Journal Co. v. United States Dep't of Army*,
   981 F.2d 552 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975) . . . . . . . . . 9

*Rojas-Vega v. United States Immigration & Customs Enforcement*,
   302 F. Supp. 3d 300 (D.D.C. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Safecard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) . . . . . . . . . . . . . . . 10

*Senate of Puerto Rico v. Department of Justice*,
   823 F.2d 574 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Spokeo v. Robins*, 136. S. Ct. 1540 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60 (1st Cir. 2002) . . . . . . . . . . 11, 12

*Stevens v. DHS*, 2020 U.S. Dist. LEXIS 61630 (N.D. Ill. April 8, 2020; ECF No.
   144) at *25, *29 (slip op. at 23, 27) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . 11

*United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . 19

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

5 CFR

§ 293.311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 USC

§ 552(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 552(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 552(b)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

§ 552(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

8 USC

§ 1226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Civil Procedure

Rule 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 34(b)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

OTHER AUTHORITIES

*Index Newspapers v. Portland*, No. 3:20-cv-01035-SI (D. Oregon), ECF No. 144 at
  6 (14 Aug. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Defendants' Motion for Summary Judgment . . . . . . . . . . . . . . . *passim*

Pineiro declaration . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Pineiro Vaughn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Transcript of June 5, 2020 . . . . . . . . . . . . . . . . . . . . . . . 13

Transcript of May 19, 2020 . . . . . . . . . . . . . . . . . . . . . . . 18

# V. Statement of Facts

*See* Plaintiff's LR 56.1 Counter-Statement of Material Facts (SOMF) and Response to Defendants' SOMF, filed simultaneously herewith.

# VI. Standard of Review

Plaintiff has no disagreement with Defendants' recitation of summary judgment standards in FOIA cases. Plaintiff also does not now dispute the adequacy of Defendants' search.

# VII. FOIA Document arguments

There are two general categories of documents withheld in this case. Plaintiff will group them in this way:

    Category One    Training documents regarding the *Pereira-Brito* Order

    Category Two    Email communications with OIL attorneys

## A.  Category One: Training documents

Most importantly, ICE has redacted in near-entirety a 21-page document entitled "Brito Strategy Session," Bates 2020-ICLI-00025 01 through 2020-ICLI-00025 21 (ECF No. 23-14, Exhibit NN to the First Amended Complaint)[3]. Aside from the title page and the 19th page, and quotes from the *Pereira Brito* decision, the document is withheld in full:



ICE claims the "deliberative and attorney work-product privileged information created in anticipation/contemplation of litigation." Pineiro Vaughn at 3 of 41.

ICE also claims the authors on the title page are exempt from disclosure. For the same reason that the authors of emails should be disclosed, as discussed below in section **B.2**, only even more strongly, as the authors are Deputy Chief Counsel (DCC) for ICE Boston, supervisory personnel who should be even more accountable than line attorneys and their identities must therefore be disclosed.

As for EOIR, it withheld in entirety two documents, "OGC Guidance Brito 12.9.19 final" and "EOIR Instruction and Guidelines Alternatives to Detention" as well as redacting in substance a handful of emails from Boston Assistant Chief Immigration Judge José A. Sánchez to his subordinate immigration judges, Bates EOIR-0522 001, 002, 026 and 027[4], "advising how and when to implement the bond hearing requirement." Defendants' Motion at 6.

---

[3]  Bates number series 2020-ICLI-00025 is used to refer to ICE's "supplemental" production of Sept. 8, 2020, despite ICE having used the same Bates numbers for a slightly different organization of overlapping documents in their prior productions.

[4]  EOIR produced its documents to Plaintiff on May 22 with no Bates numbers whatsoever, as 7 inde-

EOIR's Vaughn Index is not specific about the basis for its withholding and redaction, merely stating "under the b(5) exemption" without specifying the underlying privilege. For that reason alone, it has failed to claim the exemption with the required specificity and therefore is not entitled to the exemption.

From its motion, EOIR claims deliberative process (at 7), attorney work-product (at 11), and attorney-client (at 15) privilege for these documents.

In general, Defendants arguments swallow the whole: were their claims of privilege to apply to the materials at issue in this case, they would apply to *any* training materials for immigration judges and ICE trial attorneys. That cannot be the law.

Because Category One documents are so few and so short, they are an excellent candidate for *in camera* review by this Court.

### A.1   ICE's deliberative process claims fail

To establish deliberative process, the agency must show a document is both "predecisional" and "deliberative." *Providence Journal Co. v. United States Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992). ICE has done neither.

> A document will be considered "predecisional" if the agency can (i) pinpoint the specific agency decision to which the document correlates, *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983), (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *Hopkins v. Department of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), and (iii) verify that the document "precedes, in temporal sequence, the 'decision' to which it relates." *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

*Providence Journal*, 981 F.2d at 557.

---

pendent PDF files without clear ordering. In ECF No. 49-7, pp. 3 of 56 through 56 of 56, EOIR has reproduced its May 22 production with 3-digit sequence numbers. Plaintiff will refer to those as Bates series EOIR-0522.

ICE has failed to establish its training materials are pre-decisional. It has identified no specific agency decision to which the document correlates, nor has it established that the training materials was prepared to assist with that decision.

> A predecisional document will qualify as "deliberative" provided it (i) formed an essential link in a specified consultative process, (ii) "reflects the personal opinions of the writer rather than the policy of the agency," and (iii) if released, would "inaccurately reflect or prematurely disclose the views of the agency." *National Wildlife Fed'n v. Forest Serv.*, 861 F.2d 1114, 1118-19 (9th Cir. 1988); *see also Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) (agency must show the decisional "context" of the document within the process used to reach determinations "like those in issue"); *cf. Senate of Puerto Rico*, 823 F.2d at 585-86 (agency bears burden of establishing 'what deliberative process is involved, and the role played by the documents in the course of that process') (citation omitted).

*Providence Journal*, 981 F.2d at 559.

ICE has further failed establish deliberateness. It shows no consultative process, nor does it attempt to allege the document "reflects the personal opinions of the writer rather than the policy or the agency." ICE does not even identify the author(s).

ICE's documents do not qualify for the deliberative process privilege.

### A.2   EOIR's deliberative process claims fail

The situation is much the same with EOIR. It identifies no specific agency decision, as is required, nor does it show a consultative process or allege personal opinions. It refers vaguely to "collaboration between EOIR, OIL, Civil Division, and DHS attorneys." Motion at 7. But that is not sufficient to allege a personal opinion and to establish deliberative process.

Materials that provide general guidance for adjudicating court decisions are not "pre-decisional." They are policies and procedures that themselves form a decision that is subject to FOIA.

### A.3   ICE's attorney work-product claims fail

> The attorney work-product privilege first established in *Hickman v. Taylor*, 329 U.S. 495 (1947), codified in Fed. R. Civ. P. Rule 26(b)(3) for civil discovery, protects from disclosure materials prepared by attorneys "in anticipation of litigation." Since *Hickman*, courts have reaffirmed the "strong public policy" on which the work-product privilege is grounded. *E.g., United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998). The privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party.

*State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 66 (1st Cir. 2002).

To suggest that guidance ICE trial attorneys received from their superiors, who are also attorneys, is automatically attorney work-product privileged is to offer a privilege that swallows the whole. If Defendants' interpretation is to be believed, then any instructions to ICE Trial Attorneys would similarly be privileged. That cannot be the rule.

Further, guidance on how to implement an injunction is not "in anticipation of litigation," even if that injunction may be appealed. Similarly to above, if that were the rule, no agency decisions about how it implements any potentially appealable injunction from an Article III Court would be available to the public under FOIA. That is simply far too broad.

### A.4   EOIR's attorney work-product claims fail

Similarly, EOIR claims attorney-work-product for "legal analyses, opinions, and recommendations from OGC to its Agency clients on how to handle bond hearings anticipated to occur as a result of *Brito*."

Those are policies and procedures that form a decision and are subject to FOIA.

### A.5   Attorney client-privilege claims fail

> The attorney-client privilege "is the oldest of the privileges for confidential communications recognized by law." Weinstein's Federal Evidence, § 503.03

(2d Ed.). The modern rationale for the privilege is more practical and expansive, promoting full disclosure by clients to their attorneys; "it enables attorneys to act more effectively, justly, and expeditiously." *Id.* The privilege also protects from disclosure documents provided by an attorney if the party asserting the privilege shows:

(1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived.

*State of Maine*, 298 F.3d at 71.

Where ICE and EOIR's counsel assisted in developing a policy for immigration judges and trial attorneys, that ultimately policy cannot be privileged. Counsel assist in developing almost all court policies. They cannot all be privileged.

Defendants lump the training materials together with litigation strategy emails about the appeal of the *Pereira Brito* case, and suggest they are all privileged because "their strategy on the government's impending appeal of *Brito*" is. No such thing is true. Implementation of the injunction is separate and apart from appellate litigation strategy.

Defendants do not walk through the *Maine* factors, and fail to show the 3rd factor with respect to the training materials.

## B.  Category Two: Email communications with OIL attorneys

Plaintiff's FOIA requests was never intended to capture communications between the Defendant agencies and their attorney counsel within DOJ Civil Division (specifically, the Office of Immigration Litigation); they were intended to capture any inter-agency communications, not subject to exemptions, regarding the implementation of the injunction.

The requests sought "any communication between ICE OPLA and DOJ EOIR regarding the *Pereira Brito* litigation," and because DOJ counsel sent emails regarding the case to both their EOIR and ICE clients in one message, an ICE reply-to-all would also go to

12

EOIR, making it a communication from ICE to EOIR and within the scope of the request. And, because those replies quoted the original messages, the result is that messages from DOJ counsel to their agency clients were produced in response to a request for messages between those agency clients.

Plaintiff does not dispute that Defendants are likely entitled to privilege claims over much of the content of these emails. Indeed, Plaintiff offered to narrow the scope of the request when Defendant ICE estimated there were 1600 pages of responsive emails — but Defendant ICE declined. Transcript of June 5, 2020.

**However**, Plaintiff strongly objects to the redaction of names and email addresses from these emails, as well as their technical form of production.

### B.1   Email addresses and names

In their FOIA productions, Defendants have redacted the names and email addresses of ICE attorneys[5], while preserving the names and email addresses of EOIR and Civil Division employees. Defendants claim this redaction under Exemption 6 and 7(C), because ICE is a "law enforcement agency."

This is a bridge too far. ICE attorneys are not undercover detectives whose identity must be shielded to allow them to do their jobs. ICE may well be, as Defendants state, the "the second largest investigative agency in the Federal Government (Pineiro declaration at 6 ¶17), but its attorneys are not field agents.

There is dearth of case law on these issues, but a district judge in the Seventh Circuit recently considered this issue for the same defendant agency, as to names, and found them subject to disclosure. *Stevens v. DHS*, 2020 U.S. Dist. LEXIS 61630, *29 (N.D. Ill. April 8, 2020; ECF No. 144) at *25, *29 (slip op. at 23, 27):

---

[5]   Defendants also redact cellular and direct-dial telephone numbers in some cases, including for non-ICE employees. Plaintiff raises no quibble with those narrow redactions.

> ICE redacted names and other personal identifiers from the supplemental production pursuant to Exemptions 6 and 7(C). During negotiations, ICE agreed to disclose the names of certain federal employees that it had previously redacted. Now, Stevens challenges the remaining name redactions. Stevens does not challenge ICE's redaction of email addresses, phone numbers, and third-party information under Exemptions 6 and 7(C). (*See* Pl.'s Reply at 10 ("The only redactions challenged here are the names appearing on the 'to' and from' line of the email correspondence.").) Therefore, the Court analyzes only whether Exemptions 6 and 7(C) apply to ICE's redaction of federal employee names from the emails in the supplemental production.
>  . . .
> First, ICE argues broadly, stating that these emails and attachments involve "the performance of ICE's law enforcement mission." (Def.'s Reply at 8.) Yet, under this definition, any email or document ICE creates or exchanges qualifies for the privilege. Exemption 7(C) is not so all-encompassing. Next, ICE pivots a few degrees, asserting that it compiled these emails and attachments for the purpose of detaining "individuals who are in the United States illegally." (*Id.* at 9.) This is no less broad than ICE's first point and merely repeats one of ICE's general functions. Neither proffered purpose links the documents to a specific investigation. Instead, the documents relate to "the general execution of tasks by agency personnel." *Families for Freedom*, 797 F. Supp. 2d 375, 397 (S.D.N.Y. 2011). While the topics addressed in the documents pertain to law enforcement in a general sense, the documents are not investigatory. Thus, they were not "compiled for law enforcement purposes." 5 USC § 552(b)(7)(C). ICE must disclose the redacted names of the other federal employees on the emails.

Defendants cite to *Rojas-Vega v. United States Immigration & Customs Enforcement*, 302 F. Supp. 3d 300 (D.D.C. 2018) but over-generalize its holding. In *Rojas-Vega*, ICE produced records from its ENFORCE Alien Removal Module database (EARM) that includes front-line investigative ICE employees who are indeed analogous to traditional law-enforcement boots on the ground. This out-of-circuit decision was not a holding about attorneys in offices.

ICE suggests that there is a risk of "embarrassment, harassment, and undue public attention" should this information be disclosed. But ICE offers no reason to show why its staff members are subject to any sort of special treatment or why they differ from any other federal employee at any other agency.

In their summation, ICE gets it exactly wrong when it says, "there can be no claim by Plaintiff that the disclosure of this information would provide the public with a greater understanding of 'what the government is up to.'" Motion at 48. Knowing the *who* in "*who is doing what*" is an enormous part of understanding what the Government is up to.

*In the alternative,* if this Court were inclined to grant ICE's request to withhold ICE attorneys names, then the proper course is not redaction, but rather substitution of a neutral identifier. Because there are hundreds of pages of emails, all going from redacted names to other redacted names, it is extremely difficult to follow the threads of conversation and make sense of them (especially given the attorney-client-privileged redactions). ICE should instead replace[6] each name with a unique identifier (*e.g.* "ICE-ATTORNEY-001," etc.) in order to preserve ICE's privacy without hampering the public's ability to understand its production.

Although Plaintiff is not terribly interested in the email addresses of ICE employees, ICE may not redact those either. ICE email addresses are generally of the form *Firstname.Lastname@ice.dhs.gov* or *Firstname.MI.Lastname@ice.dhs.gov* and are no secret given the name of an ICE employee[7].

Why does Plaintiff care? Because ICE took three months to redact 413 pages of emails, because it was allowed to perform unnecessary make-work. ICE should be on notice that FOIA requires it to produce emails without unnecessary redaction of names or email addresses, which should enable it to satisfy its FOIA obligations more quickly and efficiently.

ICE attempts to argue it has designated itself as a "security/sensitive" agency, but it

---

6  Via automated search-and-replace function.
7  If ICE and its parent agency (Department of Homeland Security—DHS) wished the ability to shield email address from production, they should have chosen a less predictable scheme. Apparently Ken Cuccinelli uses *as2ktc@hq.dhs.gov* (for Acting Secretary II Kenneth T. Cuccinelli) and Chad Wolf uses *as1cfw@hq.dhs.gov* (for Acting DHS Secretary I Chad F. Wolf). *See Index Newspapers v. Portland*, No. 3:20-cv-01035-SI (D. Oregon), ECF No. 144 at 6 (14 Aug. 2020).

blows the argument and fails to support it. ICE claims its own "ICE Office of Personnel Management" so-designated ICE. Motion at 20. But that's wrong. It's the United States Office of Personnel Management (OPM), an independent federal agency.

The Pineiro declaration , ECF No. 49-1, at ¶49 alleges OPM "approved ICE's request" for this designation, but fails to include either ICE's request or OPM's designation, making this an unsupported conclusory statement that this Court should disregard[8]. It appears that OPM's designation action has no bearing on other federal agencies, such as ICE, but rather speaks only to the release of name and salary information by OPM under FOIA pursuant to 5 CFR § 293.311. At best, it is one executive branch agency covering for another, without even exercising notice and comment rulemaking.

### B.2  Format of production

As to format, Defendants have produced the email messages not in a native email format, but rather in PDF after crippling their machine-readability[9], defeating searching and automated processing.

Defendant ICE produced 413 pages in PDF format, as low-resolution (150 dpi) images, with color converted to gray (except for 3 pages), with the result that email header information that was originally colored blue becomes a sufficiently distorted gray that cannot be reliably recovered through Optical Character Recognition (OCR).

Defendant EOIR produced 54 pages in PDF format, including 12 as low-resolution rasterized images (144 dpi) with lossy JPEG compression[10], with the result that all of the

---

[8] If Defendants expect Plaintiff to FOIA these documents from ICE or OPM within the times allowed for summary judgment briefing, Plaintiff joins ICE in its desire to measure FOIA production times in hours or small number of days rather than months and years.

[9] Although it's technically possible to recover the machine readability after PDF conversion, it is often an unreliable and complicated set of technical processes whose success or failure is highly dependent on the exact choices made in PDF creation.

[10] JPEG compression is "lossy," meaning the exact original cannot be recovered, only an approximation. It is appropriate for continuous-tone images, such as photographs in non-forensic contexts, but not for

16

text cannot be reliably machine-processed through Optical Character Recognition (OCR).

Defendants should be required to produce these redacted emails in usable form, as they would be required to do under Fed. R. Civ. P. 34(b)(2)(E) if they had been produced in civil discovery.

## VIII. Plaintiff's non-document claims

Plaintiff brought non-document claims seeking to compel ICE and its parent agency to comply with the FOIA statute's requirements for status systems, annual statistical reporting, and appoint their statutorily-mandated Chief FOIA officer. The original complaint brought these as APA claims, and the Amended Complaint pleads them as both FOIA and APA claims.

Plaintiff alleges the violations as a pattern-and-practice, so a mere order requiring compliance in this case is insufficient to cure the harm for other pending claims, cases, and requests, from Plaintiff and from others. Even if found to be moot, the violations would fall into the exception as capable of repetition, yet evading review.

The court has authority under FOIA to order relief for non-document FOIA claims. "Even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Nkihtaqmikon v. BIA*, 450 F. Supp. 2d 113 (D. Maine 2006) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).

Defendants suggest that Plaintiff is incorrect to seek Defendants DHS and ICE's compliance with both the telephone and Internet requirements of 5 USC § 552(a)(7)(B). Motion at 21. Defendants misunderstand.

---

text or sharp lines drawings. Defendant ICE did not use lossy compression in its production.

ICE provides *neither* a functioning "telephone line or Internet service that provides information about the status of a request." 5 USC § 552(a)(7)(B). Its telephone line, as alleged in the Amended Complaint at ¶¶ 50–54, provides merely an outgoing message that allows no inquiry or interaction. Its Internet Service, as alleged at ¶ 55 of the Amended Complaint, provided no information about the Dec. 19, 2019 FOIA request as of Jan. 30, 2020.

Given the FOIA statute's expectation of a twenty business day response, status systems that does not provide information within that timeframe (for the Internet service), or ever (for the telephone system), cannot meet the requirements of the statute.

Defendant makes much of the nine day gap between the Jan. 22 email inquiry and the filing of this litigation. Motion at 22. But that is the wrong time period. Plaintiff's Jan. 22 inquiry should be measured against his Dec. 19 request. The inquiry was to aid in determining whether the agency was responsibly processing the request, and thus whether to forestall litigation. Not only would a response not have been "fruitless," it would not have been "*Certainly*. . .fruitless" as Defendant cavalierly claims without foundation.

Defendants suggestion that FOIA provides an adequate remedy at law for agency non-compliance with FOIA deadlines (and by implication status reporting obligations) is laughable. By the time any litigant waits for FOIA's twenty business days to expire and files suit, manages to serve the Government, receives an answer to the complaint, and gets a hearing before a judge, months will have passed[11]. This is no way to obtain the status on a request that should be handled within days or weeks.

Plaintiff and Defendants agreed informally to stay discovery of these non-document claims pending this summary judgment proceeding (Transcript of May 19, 2020 at 7:24–

---

11  In this litigation, the complaint was filed on Jan. 31, and the USPS served the last defendant on Feb. 6. The Government's answer not filed until April 20, and the initial scheduling conference set for May 19. More than four months. Although a motion for a Temporary Restraining Order to speed up Defendants' response is technically an option, it is not a realistic one in many cases.

8:11), so there has been no action.

To the extent that there may be relief available under either the APA or FOIA, this Court should wait for facts to play out and determine which statute is applicable at that time. It should not pretermit the APA claims while the FOIA claims are pending.

Defendants fail to address Plaintiff's pattern-and-practice claims beyond a footnote, so they should not be dismissed by this court. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Discovery on these claims has not yet begun.

However, Defendants suggest the issue is one of standing, which the Court has an independent obligation to assess. Plaintiff has standing because he has raised cases or controversies within the power of this Court to redress. *Spokeo v. Robins*, 136. S. Ct. 1540, 1547 (2016). Plaintiff is injured by Defendant's lack of ability to provide status updates on FOIA requests, where Defendant files to timely respond to the FOIA requests or the status inquiries. Without status information, Plaintiff has no way to understand how long the delay will truly be to vindicate his First Amendment right to access to public records that the FOIA statute implements. Delay is injurious to sunlight.

Plaintiff's injuries are clearly traceable to Defendants. If Defendants had complied with the statute, Plaintiff would suffer no delay. And if there were delay, and Plaintiff had complied with the status inquiry, Plaintiff would at least understand the delay and be able to reasonably determine whether costly litigation was the appropriate next step.

Plaintiff's injuries are likely to be redressed by a favorable decision of this Court. An injunction ordering Defendants to answer their phone will allow Plaintiff, and others, to obtain status information on their FOIA requests.

Therefore, the non-document APA claims should not be dismissed and discovery should proceed.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument on the pending motion.

Respectfully submitted,

**PLAINTIFF**,
**JOHN A. HAWKINSON**, *pro se*

*/s/ John A. Hawkinson*
John A. Hawkinson
Box 397103
Cambridge, MA 02139-7103
617-797-0250

Dated: November 30, 2020    *jhawk@alum.MIT.EDU*

## CERTIFICATE OF SERVICE*

\* Not required.  (Plaintiff thanks Defendants for the reminder that the Dec. 2018 amendments to Fed. R. Civ. P. 5 and the Nov. 2019 conforming amendments to the D. Mass Local Rules remove the requirement for a certificate of service for ECF-served papers.)