UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
JOHN A. HAWKINSON,           )
                              )
        Plaintiff,             )
v.                          )     C.A. No.  20-10189-FDS
                              )
IMMIGRATION AND CUSTOMS    )
ENFORCEMENT; EXECUTIVE OFFICE  )
FOR IMMIGRATION REVIEW;      )
DEPARTMENT OF HOMELAND      )
SECURITY; and DEPARTMENT OF    )
JUSTICE,                       )
                              )
        Defendants.         )
_____)

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On November 5, 2020, Defendants United States Immigration and Customs Enforcement

("ICE") and Executive Office of Immigration Review ("EOIR") moved for Summary Judgment.

*See* Dkt. Nos. 48, 49.  On November 30, 2020, Plaintiff John A. Hawkinson ("Plaintiff") filed his

Opposition thereto ("Opposition").  *See* Dkt. No. 57.  In his Opposition, Plaintiff maintains that

this FOIA matter centers around whether the Government can make secret rules for litigants in

immigration courts; conduct *ex parte* strategy and policy making between immigration judges

("IJ") and the courts and the government attorneys who appear before them; and successfully

shield all records about them from the public view under the guise they are protected by the

attorney client, work product, and deliberative process privileges contemplated in Exemption 5

of the Freedom of Information Act ("FOIA").  *See* Opposition, p. 1.

As explained in Defendants' Motion for Summary Judgment and herein, the use of Exemption 5 regarding the "training" materials identified in Plaintiff's Opposition and emails was proper, as was their use of Exemption 7. Accordingly, the Court should grant Defendants' Motion for Summary Judgment.

## DEFENDANTS' USE OF EXEMPTION 5 TRILOGY OF PRIVILEGES WAS PROPER

### A. Attorney Work-Product Privilege

In his Opposition, Plaintiff maintains that ICE's use of the attorney work-product privilege as it relates to the "*Brito* Strategy Session" document is misplaced because, although it contains guidance from OPLA Office of Chief Counsel ("OCC") instructing how to prepare for, and litigate, bond hearings under the then recently issued court order that changed the landscape in those hearings, such guidance is not provided "in anticipation of litigation" as that term is used under Exemption 5 of FOIA. *See* Opposition, p. 11. The facts and law hold a contrary conclusion. Indeed, the guidance on how to litigate the contemplated influx of bond hearing cases under the new burden of proof standard imposed by this Court (Saris, J.) to class members of *Brito* squarely falls within the work-product privilege.

To fall within the work-product privilege, litigation need not have actually commenced so long as specific claims have been identified which makes litigation probable. *See Citizens for Responsibility and Ethics in Washington v. National Archives and Research Admin.,* 583 F. Supp. 2d 146, 160 (D.D.C. 2008) (work-product privilege applies where agency reasonably could have anticipated litigation). In fact, courts have held that the work-product privilege applies to documents prepared in anticipation of forseeable litigation, even if no specific claim is contemplated. *See American Civil Liberties Union of Northern California v. U.S. Department of Justice,* 880 F.3d 473, 487-88 (9th Cir. 2018) (concluding that portions of USABook that detail

DOJ's developed legal argument regarding process of obtaining court authorization for certain investigative techniques fall within work-product privilege and no need that the documents were prepared in anticipation of specific litigation); *Media Research Center v. U.S. Department of Justice,* 818 F. Supp. 2d 131, 141 (D.D.C. 2011) (when government attorney acts as "legal advisor" to agency concerning litigation that may arise from challenge to government program, specific claim not required for work-product application).

That being said, the "*Brito* Strategy Session" document was prepared by the managing attorney of ICE's Office of Chief Counsel, and was intended for attorneys to assist in their preparation for litigation covering topics such as instructions regarding potential lines of questioning to pursue, possible arguments to make, which evidence to look for when determining the strength of "dangerousness" and "flight risk" factors, etc. *See* Pineiro Decl., ¶ 29. This type of activity is at the heart of attorney preparation for anticipated hearings and is material intended to be protected by attorney work-product privilege. *See American Civil Liberties Union v. U.S. Department of Education,* 320 F. Supp. 3d 270, 281-282 (D. Mass. 2018)(upholding the attorney work-product privilege to withhold a litigation manual under FOIA Exemption (b)(5)); *see also Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office of U.S. Attorneys,* 844 F.3d 246, 251-252 ( (D.C. Cir. 2016)(a manual prepared by DOJ for prosecutions, containing litigation strategies, giving "practical how-to advice . . . about how to handle different scenarios and problems," discussing "the types of challenges prosecutors may encounter in the course of prosecutions and potential responses and approaches" was protected under attorney work-product privilege).

The same logic applies to the two documents withheld by EOIR that were attached to internal emails; namely, (i) "OGC guidance *Brito* 12/9/19 final", and (ii) "EOIR Instructions

and Guidelines Alternatives to Detention final". *See* Schaaf Decl., *Exhibit 2, ¶¶* 29, 30. These two documents were drafted by EOIR Office of General Counsel ("OGC"), each of which contains legal analyses, opinions, and recommendations from OGC to its Agency clients on how to handle bond hearings anticipated to occur as a result of *Brito,* as well provide guidance to Agency clients as to "alternatives to detention" as a result of the decision in *Hernandez v. Lynch. Id.,* ¶ 30. Similarly, when the EOIR is a named party to litigation, attorneys from the Immigration Litigation Unit within the EOIR OGC are assigned as agency counsel in a case when necessary to provide legal advice and guidance to employees in the field (i.e., immigration courts) regarding the interpretation of legal holdings and orders promulgated in a case. *Id.,* ¶ 23. The advice is often crafted in consultation with the attorney assigned as agency counsel and OIL. *Id.*

Likewise, as articulated in Defendants' opening brief, EOIR redacted information in the email strings entitled "*Brito* MSJ Hearing", "*Brito* MSJ Appeal and Stay Recommendations", and "*Pereira-Brito* Service of Class Notice" because the text redacted in these e-mail strings consist of legal conversations, preliminary assessments, and draft legal language shared exclusively between Government attorneys representing their agencies in ongoing civil litigation in which the United States is a party, the release of which would tend to reveal the Government attorneys' legal strategies, opinions, recommendations, and legal assessments of the strength and weakness of the Government's position. *Id*., ¶ 32. Bearing the above in mind, Exemption 5 protected the information withheld by EOIR as attorney work-product.

### B.    Attorney-Client Privilege

Plaintiff attacks Defendants' use of the attorney-client privilege under Exemption 5 stating that attorneys provide advice they are part of policy making which is not protected

attorney-client activity. *See* Opposition, p. 12. Likewise, according to Plaintiff, Defendants' lumping of training materials with litigation strategy emails about the government's impending appeal of *Brito* is not privileged because implementation of the *Brito* injunction is separate from appellate litigation strategy. *Id.*

To be abundantly clear, ICE has never claimed attorney-client protections over its "*Brito* Strategy Session" document; rather, the privilege was applied to a series of email communications comprising various versions of two email chains, one titled "Brito MSJ Appeal and Stay Recommendation" and the other "Brito MSJ Hearing." *See* Pineiro Decl., ¶ 34; Schaaf Decl., ¶ 33. Defendants will not re-iterate the discussion about these documents contained in its opening brief at pp. 16-18 on the attorney-client privilege except to state that these communications are privileged because they are between ICE attorneys in their capacity of a client on the one hand, and DOJ OIL attorneys who represent the agency interests before the court on the other, and consist of legal advice and recommendations regarding litigation strategy provided by DOJ to ICE. *Id.* Despite Plaintiff's characterization otherwise, these emails do not pertain to the development of an agency policy, but rather to litigation strategy and legal advice. Thus, they are privileged. *See Mead Data Center, Inc. v. U.S. Dep't of the Air Force,* 566 F. 2d 242, 252 (D.C. Cir. 1977): *National Security Counselors v. Central Intelligence Agency,* 206 F. Supp. 3d 241, 285-86 (D.D.C. 2015) (legal advice by CIA OCG attorneys to assist in preparation of training materials for CIA employees responsible for processing FOIA requests were properly withheld under attorney-client privilege).[1]

---

[1] Plaintiff seemingly concedes that the emails at issue are privileged. *See* Opposition, p. 13. Oddly enough, despite being privileged, Plaintiff seeks the release of the names of the individuals who authored these emails as discussed herein as he somehow claims the names

EOIR's position on these emails and other documents withheld is, like that of ICE, discussed in great detail in Defendants' opening brief. *See* Dkt. No. 48, pp. 14-18.

## C. Deliberative Process Privilege

Defendants will not belabor this Court with a further detailed discussion on the deliberative process privilege already discussed in their summary judgment brief except to state that as to its application to ICE's "Brito Strategy Session" (or EOIR's application of the privilege to the documents referenced therein), this document does not tell attorneys exactly what to argue before the IJ's, but rather points out which evidence to look for, and presents potential lines of questioning and possible arguments. In fact, the attorneys are instructed that the suggested lines of questioning are not exhaustive nor must be asked in each case, and that each case, and thus the attorney's ultimately chosen inquiry, will be unique. Therefore, the training document is pre-decisional in nature because the final decision of what to argue in each individual bond hearing ultimately lies with the attorney handling the case, and depends on the specific facts pertinent to it. The various litigation strategies presented are meant to be the starting point in each attorney's analysis of the ultimate litigation strategy to pursue in the case and how to prepare for it.[2]

## NAMES AND EMAIL ADDRESSES WERE PROPERLY WITHHELD

Plaintiff acknowledges that the redactions applied to emails in question are likely entitled to protection as stated, *see* Opposition, p. 13, but challenges the removal of the names and email

---

would shed light on what's the government is up to. Plaintiff also claims he captured these emails even though they were outside his intended request. *Id.*, pp. 12-13.

[2] Plaintiff claims that EOIR did not identify the agency decision or the deliberative process concerning its redactions in the 3 emails at issue. *See* Opposition, p. 10. EOIR did so in its discussion in the summary judgment brief (Dkt. No. 48, pp. 7-9), but to be sure, the agency decision involved dealt with how to handle the *Brito* decision and the emails represent the collaborative process between OGC and the employees implementing *Brito*.

addresses from those emails. *Id*. In support, Plaintiff relies on the holding of a district court case in Illinois; namely, *Stevens v. DHS,* 2020 U.S. Dist. LEXIS 61630, at * 29 (N.D. Ill. Apr. 8, 2020).   *See* Opposition, p. 13. Nonetheless, not only is *Stevens* distinguishable from the case at hand, but Plaintiff does not discuss how the *Stevens* decision applies in the context of Exemption 6 and 7(C) to the case at hand.

First, *Stevens* holding is not binding on this Court. Second, the records at issue in *Stevens*, drafts of press releases and agency responses to congressional inquiries and related email discussions, are very different from those in question here – consisting of admittedly privileged discussions concerning litigation strategy among attorneys, and litigation strategy training materials.  Third, the court's reasoning in *Stevens* was legally erroneous as it focused its attention on the analysis of whether drafts of press and congressional responses and emails discussing them constituted "similar files" under Exemption 6, whereas the proper analytical approach would have been to analyze whether the public interest in disclosure of the documents outweighed the privacy interests of the individuals whose personal information was contained in the files.  *See, e.g., U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599-603 (1982) (Congress intended the term "similar files" broadly and the protection of an individual's privacy was not intended to turn on the label; rather, all information that applies to a particular individual meets the threshold requirement of Exemption 6).  Fourth, the *Stevens* case was decided prior to ICE's designation as a security/sensitive agency, which decidedly tips the balance in favor of withholding ICE employee names to protect their privacy.  Lastly, *Stevens* case is further distinguishable because in that case the court found Exemption 7(c) did not apply to withhold the names of ICE employees because drafts of press and congressional responses were not compiled for a law enforcement purpose.

On the other hand, the records are significantly different than those in *Stevens* in that they were compiled as a direct consequence of the *Brito* decision, which affected ICE's ability to enforce immigration laws and therefore were clearly compiled for law enforcement purposes. In any event, the court in Stevens was wrong to conclude that for the records in question to be compiled for law enforcement purposes they needed to pertain to "investigations," when case law is clear that this is not a pre-requisite for Exemption 7 protection to attach. *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (explaining that 1986 FOIA amendments changed threshold for Exemption 7 to delete "any requirement" that information be investigatory and that exemption therefore can be applied more widely); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement . . . ."); *North v. Walsh*, 881 F.2d 1088, 1098 n.14 (D.C. Cir. 1989) (stating that Congress in 1986 "changed the threshold requirement for withholding information under exemption 7" so that "it now applies more broadly"); *Wash. Post Co. v. United States Dep't of Justice*, No. 84-3581, 1987 U.S. Dist. LEXIS 14936, at *26 (D.D.C. Sept. 25, 1987) (magistrate's recommendation) (noting that an "[a]gency's burden of proof in this threshold test has been lightened considerably"), *adopted* (D.D.C. Dec. 15, 1987), *rev'd in part on other grounds & remanded,* 863 F.2d 96 (D.C. Cir. 1988).

Moreover, Plaintiff claims that Defendants have over generalized the holding in *Rojas-Vega v. United States Immigration & Customs Enforcement,* 302 F. Supp. 3d 300 (D.D.C. 2018) when cited in support of their position that the redaction of names from the emails of several ICE was proper. *See* Opposition, p. 14. Plaintiff notes that the ICE employees in *Rojas-Vega* were front line investigative employees, not attorneys like here, thus their names were properly redacted. *Id.* Defendants submit that Plaintiff reasoning is misplaced. Indeed, the names

withheld in this case not only included ICE attorneys who were involved in the enforcement of immigration laws in the context of defending against the release of aliens in the community who may pose a flight risk or are a danger to the community, but also included the names of aliens and third parties. *See* Pineiro Decl., *Exhibit A,* ¶ 48. Lost on Plaintiff is the fact that ICE employees do not surrender their privacy interest as a private citizens, and said interest is as its apex. *See U.S. Dept. of Justice v. Reporters Committee for Freedom of Press.* 489 U.S. 749, 780 (1989).

Similarly, Plaintiff has not pointed to any fact that the public interest in knowing the names of the ICE employees is "a significant one", and that the disclosure is likely to advance the public's knowledge of "what's the government is up to". *See National Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (1989). Instead, Plaintiff asserts that knowing *who is doing what* is an enormous part of understanding what the government is up to. *See* Opposition, p. 15. Needless to say, using Plaintiff's own words, such a position would "swallow the rule". In other words, the strong privacy interest bestowed upon private individuals under well-established FOIA law would be rendered a nullity should Plaintiff's rationale rule the day. Simply put, it does not.

Additionally, recognizing the vulnerability of ICE employees, the Office of Personnel Management ("OPM") declared ICE as a security/sensitive agency, thereby placing greater protections on its employees' privacy interests.[3] Plaintiff questions this fact asserting that ICE needed to attach as an exhibit ICE's request for that designation or OPM's designation as such. *See* Opposition, p. 16. No such documentation, however, is required as the information is

---

[3] Defendants' brief inadvertently stated that "ICE" OPM designated the agency as such. The Piniero Decl., ¶48 cited in the brief is clear that it was OPM, a separate federal agency.

contained in a sworn affidavit by an individual with knowledge of its existence. Certainly, Plaintiff has no basis to question the statements of fact in the Piniero Decl. which, as a matter of law, are afforded a presumption of good faith by the Court. *See Defenders of Wildlife v. U.S. Dept. of Interior,* 314 F. Supp. 2d 1, 8 (D.D.C. 2004); *Providence Journal Co. v. U.S. Dept. of Army,* 981 F.2d 552, 556 (1st Cir. 1992) (court gives substantial weight to agency declarations which must describe the justifications for non-disclosure with reasonable specificity, demonstrate that the information withheld falls within a claimed exemption, and show that justifications are not controverted by contrary record evidence or by evidence of agency bad faith).

Likewise, Plaintiff's challenge to Defendants' assertion that release of the ICE names could result in harassment is without merit. Unless one has been an ostrich with its head in the sand, ICE employees have been the subject of open harassment which has bordered on, as one author has noted, domestic terror with, among other things, the Abolish ICE movement. *The Domestic Terror Threat Against ICE,* Center for Immigration Studies, Todd Berman, January 23, 2019. When balancing the interests of ICE employees in keeping their identity private with the public's interest in ascertaining what the government is up to in this context, there is no question that ICE's redaction of names and email addresses of its employees was proper.

Lastly, Plaintiff suggests that if this Court is inclined to protect the release of the ICE employee names at issue, it should require ICE to create new documents with a neutral identifier. *See* Plaintiff's Opposition, p. 15. Again, not only are the redactions proper but FOIA does not require an agency to create documents in response to a request. *See, e.g., N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 161-62 (1975); *Hudgins v. IRS,* 620 F. Supp. 19, 21 (D.D.C.

1985)(FOIA does not require an agency to answer questions, or create documents or opinions to an individual's request for information).

**IN CAMERA REVIEW IS INAPPROPRIATE**

Plaintiff maintains that because the documents at issue in his Category One-Training Documents are few in number and short, this Court should conduct an *in camera* review of them. *See* Opposition, p. 9. That is the only basis for his request and one that does not satisfy this Court's use of its discretionary powers to conduct such a review. *Maynard v. CIA,* 986 F.2d 547, 559 (1st Cir. 1993). Though the FOIA authorizes *in camera* review, 5 U.S.C. 552(a)(4)(B), courts limit such review to extraordinary rather routine cases since such review circumvents the adversarial process and can be burdensome to conduct. *Missouri Coalition for Environmental Foundation. Coal. v. U.S. Army Corp. of Engineers,* 542 F.3d 1204, 1210 (8th Cir. 2008) (stating that "*in camera* inspection should be limited as it is contrary to the traditional role of deciding issues in an adversarial context upon evidence produced in court" (internal quotations and citation omitted).

*In cameral* review is particularly unnecessary when agencies, like here, meet their burden of proof through a reasonably detailed declaration. *Maynard,* 986 F.2d at 559 (1st Cir. 1993) (court conducted *in camera* review of documents because CIA could not submit a detailed affidavit since to do so would have revealed sensitive information); *Larson v. Department of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (noting that "[i]f the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted by the record, and there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents") (internal quotation and citation omitted); *Hull v. IRS*, 656 F.3d 1174, 1196 (10th Cir. 2011) (determining that district court did not abuse its discretion in declining to order *in camera* review where agency demonstrated with "reasonable specificity" why records were exempt, and plaintiffs have not established bad faith);

11

*Associated. Press v. U.S. Dept. of Justice*, 549 F.3d 62, 67 (2d Cir. 2008) (concluding that, "in light of relatively detailed nature of the [agency's] declarations," district court's decision not to conduct in camera review was not an abuse of discretion).

Here, both ICE and EOIR have submitted detailed declarations concerning the information contained in the redactions from the documents at issue for purposes of this Court to determine whether the stated exemptions apply. Plaintiff's request for *in camera* review based merely on the small number of documents involved provides no legitimate support for said review in this context. *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) ("*In camera* inspection requires effort and resources and therefore a court should not resort to it routinely on the theory that 'it can't hurt.'").

## PLAINTIFF'S PURPORTED NON-DOCUMENT CLAIMS

Defendants will not belabor this Court with a re-iteration of the reasons for dismissal of Plaintiff's Administrative Procedures Act ("APA") for its failure to state a claim, except to state his Opposition does not countenance Defendants' arguments in this regard. As stated in Defendants' opening brief, Plaintiff's chief complaint in this context is that although he acknowledges that the agencies responded to his telephonic and email requests, he wanted a more immediate recognition. *See* Dkt. No. 48, pp. 21-23. However, FOIA does not provide a time frame within which a response is due to telephonic requests, thus, Plaintiff asks this Court to enter the administration of federal agencies in the FOIA arena and issue an order compelling such a result. *See* Plaintiff's Opposition, p. 19. Certainly, this is not an area for judicial oversight, but rather one for Congress.

Also, Plaintiff claims that Defendants did not address his bald allegation of pattern and practice except to give it short shrift in a footnote. *Id.* Again, Plaintiff lacks standing to raise such a claim. Indeed, Plaintiff "must show he is suffering an ongoing injury or faces a repetition. *See National Counselors,* 931 F. Supp. 2d at 91 (D.D.C. 2013). Plaintiff does neither. Moreover, delay

alone is not the type of illegal policy or practice that is actionable. *See Cause of Action Inst. v. Eggleston,* 244 F. Supp. 3d 63, 72 (D.D.C. 2016). In fact, courts in this circuit has questioned whether a pattern or practice claim even exists in the FOIA context. *See Nkihtaqmikon v. Bureau of Indian Affairs,* 672 F. Supp. 2d 154, 170-71 (D. Me. 2009). At bottom, Plaintiff does not raise a viable claim and his APA claim should be dismissed as he has an adequate remedy under FOIA to redress his purported claims.

Finally, Plaintiff complains that the documents he received were produced in PDF not native form, causing the copies to not be in color and not reliably recovered through Optical Character Recognition (OCR). *See* Opposition, pp. 16-17. Under 5 U.S.C. section 552(a)(3)(B), the agency is only required to produce records to a requester in "any form or format requested by the person *if the record is readily reproducible by the agency in that form or format.*" (emphasis added). Defendants can only process documents to apply redactions in either Adobe PDF or a software program called FOIAxpress. For documents to be released to requesters with redactions properly applied, they must be in a PDF format. In this case, the agency has always traditionally reproduced redacted records to the public in a PDF format and Defendants records are not readily reproducible in a "native" format as requested by the Plaintiff. Plaintiff shared his frustrations with the Court about his belief that the government needs to upgrade its technology; nevertheless, Defendants have complied with its obligations under FOIA in this regard.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests the Court to grant

summary judgment in its favor.

Respectfully submitted,

ANDREW E. LELLING,
United States Attorney

By:      /s/ Michael Sady
         Michael Sady
         Assistant United States Attorney
         United States Attorney's Office
         1 Courthouse Way, Suite 9200
         Boston, MA 02210
         (617) 748-3100
Dated: December 11, 2020              michael.sady@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Michael Sady

Michael Sady

Dated: December 11, 2020                  Assistant United States Attorney